UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCIS HAYDEN,

                              Petitioner,

v.

UNITED STATES OF AMERICA,

                              Respondent.

_____/

Criminal Case Number 99-20011
Civil Case Number 05-10287
Honorable David M. Lawson

**<u>OPINION AND ORDER OVERRULING OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING
RECOMMENDATION, DENYING MOTION TO VACATE SENTENCE,
DENYING MOTION FOR LEAVE TO SUPPLEMENT PETITION, AND GRANTING
MOTION TO DISMISS SUPPLEMENTAL PETITION</u>**

The petitioner, Francis Hayden, was convicted of manufacturing 1000 marijuana plants and conspiracy, and because he had two prior felony drug convictions, he was sentenced to mandatory life in prison pursuant to 21 U.S.C. § 841(b)(1)(A). After the court of appeals affirmed his conviction and sentence, Hayden filed a motion under 28 U.S.C. § 2255 to vacate his sentence, which the Court referred to Magistrate Judge Charles E. Binder for a report and recommendation. Judge Binder filed a report recommending that the motion be denied, and the petitioner filed timely objections. The Court has conducted a *de novo* review of the matter. The essence of Hayden's claims is that his attorney was constitutionally ineffective because he failed to advance two separate arguments on the question of whether Hayden had standing to challenge the search of a trailer, which led to the discovery of incriminating evidence. He objects to the magistrate judge's report because he believes that the magistrate judge mischaracterized his arguments on the way to recommending denial of his motion. On review, it appears that the magistrate judge may not have understood the precise nature of Hayden's claims, but the Court finds no merit to the motion because

the arguments Hayden says his lawyer should have made would not have succeeded. The motion to vacate sentence, therefore, will be denied.

The petitioner also filed a motion to supplement his initial petition with additional claims of ineffective assistance, which the government opposes as untimely. The Court finds that allowing the proposed amendment adding new grounds to the petition would contravene the one-year bar for section 2255 petitions, so the motion to supplement will be denied as well.

I.

The government's proofs at trial established that certain individuals were involved in a conspiracy to grow and sell marijuana in the early 1990s in Indiana, and that a large-scale growing operation was conducted at a farm in Sanilac County, Michigan in 1995 and 1996. The government's theory was that Francis Hayden was in charge of the Sanilac County production, which involved growing, harvesting, drying, and packaging operations. The remnants of the operation were discovered after the fact by happenstance as a state law enforcement officer responded to a complaint of horses running loose. The circumstances that led to the discovery are set forth in the magistrate judge's report and recommendation dated August 10, 2000, which he filed in connection with Hayden's original motion to suppress evidence:

> On October 31, 1996, a police officer made a warrantless entry into a residence located at 5647 Argyle Road in Sanilac County, Michigan. The residence consists of a mobile home situated on farm land. Apparently, the officer's presence at the residence was precipitated by a complaint received by Sanilac County Central Dispatch regarding two horses running loose on that property. (*See* Dkt. 150 at 2.) The caller apparently also reported concern that the person living at the farm had not been seen for a week or more. Upon arrival at the property, the officer found the horses out of the stable. He endeavored to pen the horses and proceeded to the residence. When no one answered his knock, the officer tried the door and found it to be unlocked. There was a light on in the mobile home, but still no one was responding, so the officer entered and proceeded to walk through the home. In the living room and bedroom, the officer observed what appeared to be marijuana and

marijuana paraphernalia. Based on those observations, the officer secured the scene, summoned other officers, and obtained a search warrant. (*See id.* at 3-4.) Pursuant to the warrant, numerous items of contraband were seized.

Defendant was indicted by a federal grand jury on February 10, 1999. (*See* Indit., Dkt. 4.) Defendant is charged in Count One with conspiracy to manufacture, to possess with intent to distribute and to distribute marijuana; and in Count Four with manufacturing marijuana. (*See* First Sup. Indict., Dkt. 116.)

Defendant moves to suppress all evidence seized at 5647 Argyle Road on the ground that the first warrantless entry was in violation of his Fourth Amendment rights, and the second entry pursuant to the search warrant was tainted because probable cause for the warrant was based upon observations made during the first illegal search.

The Government responds that Defendant lacks standing to object to either entry because he did not have a legitimate expectation of privacy. . . .

The documents provided by the Government relating to 5647 Argyle Road include a purchase agreement for the property dated January 27, 1995, which bears Mark Robinson's signature as the buyer and David C. Bullock's as the seller, (*see* Dkt. 182, Att. C); closing documents from the sale, such as the cashier's check showing Marcus Robinson as the remitter and the title insurance papers; a lease agreement dated April 19, 1995, which states that Marcus Robinson leases the property (including 55 tillable acres, the barn, and the trailer) to John Hunt for the period of May 1, 1995, to May 1, 1998, and that Mr. Hunt is not allowed to sublet the premises without Robinson's consent, (*see id.*, Att. F); and approximately twenty-two pages of farm operation documents, such as fuel invoices and cancelled checks from 1995 and 1996 which bear the names of John Hunt and Tom Miller. (*See id.*, Att. E.)

Also provided by the Government is a transcript of a telephone conversation between Administrator William Gray of the Sanilac County Sheriff Department and Marcus Robinson which took place on November 13, 1996. From the transcript it appears that Mr. Gray was returning Mr. Robinson's call, and the subject of conversation was Robinson's recent discovery that an affidavit for search warrant was affixed to the door of the trailer at his Argyle Road property. During the conversation, Robinson states at least twice that he rented the place to "John" and he's never heard of anyone named "Frank." Robinson states that if someone other than John is in there, they're not supposed to be. (*see id.*, Att. D.)

Defense counsel has responded to the Government's documents by pointing out that the Government's theory in this case is that Marcus Robinson and Defendant conspired together to grow and process marijuana at the Argyle Road property. Therefore, the case against Defendant is premised on the foundational assertion by the Government that Defendant had Robinson's consent to live on the property and take care of the operation. However, for purposes of standing, the Government now claims that Defendant did not have Robinson's permission to be on the property. Defendant argues that the Government should not be allowed to have it both ways.

R&R at 2-3, 6-8 (Aug. 10, 2000).

The petitioner was represented by attorney Rodney O'Farrell, who filed the motion to suppress the evidence that the magistrate was considering. Afer the magistrate judge recommended denial, O'Farrell filed timely objections, and the Court held another hearing. Thereafter, the Court concluded that the petitioner failed to establish that he had a legitimate expectation of privacy in the premises searched or the things seized, and the objections were overruled and the magistrate judge's report adopted on October 17, 2000.

The petitioner, through attorney O'Farrell, then filed a motion for reconsideration accompanied by an affidavit asserting that Hayden had permission to occupy the premises and act as a caretaker of the farm. Hayden stated in his affidavit that his duties in maintaining the farm included sowing marijuana in the field during the 1996 growing season. The Court denied the motion for reconsideration on February 2, 2001 based on *Minnesota v. Carter*, 525 U.S. 83 (1998), which held that an individual who is on someone else's property for the purpose of conducting a commercial, criminal enterprise does not have a legitimate expectation of privacy in the premises sufficient to enforce Fourth Amendment rights. On April 19, 2001, O'Farrell filed a motion to reopen the petitioner's motion for reconsideration. That motion was denied on May 11, 2001.

The petitioner was convicted by a jury on June 14, 2001. On August 20, 2001, the petitioner, still represented by attorney O'Farrell, again filed a motion for reconsideration of the suppression issue. That motion was denied on March 11, 2002.

Mr. O'Farrell represented the petitioner on direct appeal and doggedly pursued the challenge to the search of the trailer. Nonetheless, the court of appeals affirmed, stating:

> After our careful review of the record, we find no error on the issue of standing. The district court had before it the lease agreement purportedly between Mark Robinson

and John Hunt of Bad Axe, Michigan. The lease provided that it was to begin on May 1, 1995 and end on May 1, 1998. The lease agreement bore the signature of John Hunt. The lease also provided that John Hunt was not to sublet the premises defined as "fifty-five (55) tillable acres, including the barn and trailer, located on Argyle Road, Cass City, MI." J.A. 683. The district court found repeatedly that the defendant Francis Hayden was unable to demonstrate the right to be on the premises because he had no consent of the first party to the lease, *i.e.,* Mark Robinson. We affirm the district court's ruling finding that Francis Hayden had failed to establish any legitimate right to be on the premises and thus lacked standing to challenge the warrantless search of what he contended was his trailer residence. We find that the district court thoroughly and patiently considered Hayden's Fourth Amendment claims, before and after trial, and we find no error in his rulings.

*United States v. Robinson*, 116 Fed. Appx. 646, 662 (6th Cir. 2004), *vacated on other grounds*, 544 U.S. 945 (2005) (footnote omitted).

After that, the petitioner filed his motion under 28 U.S.C. § 2255 alleging that attorney O'Farrell was incompetent because he missed arguments that should have been obvious on the question of standing. He first claims that his attorney was ineffective at the trial level by continuously arguing that the petitioner had standing to challenge the search because he was the caretaker of the property. The petitioner states this argument required proof of permission from either Marcus Robinson or the elusive James Hunt to be on the property, but Mr. Hunt was never located and Marcus Robinson would not agree to make such a statement. The petitioner claims his attorney failed to present a different argument to support standing, which was obvious and meritorious: that the petitioner could come and go on the property as he wished. As evidence of this, the petitioner states that his fingerprints were in the mobile home, he lived there, he planted crops in the fields, and so forth. If counsel had made this argument, the petitioner believes, the Court would have found that he had standing and suppressed the evidence, and he would not have been convicted.

The petitioner's second claim is that his attorney was ineffective at the appellate level for failing to challenge this Court's determination that *Minnesota v. Carter*, 525 U.S. 83 (1998), prevented him from asserting a Fourth Amendment right because he was on the property to engage in a criminal enterprise. The petitioner states that his attorney should have argued that the facts of his case were materially different from the facts of *Minnesota v. Carter*. In *Carter*, the respondents only visited the location at issue for a few hours. In contrast, the petitioner here lived in the mobile home. The petitioner characterizes this argument as "unbeatable." Pet.'s Br. at 25.

The magistrate judge characterizes the petitioners claims as follows: (1) that his attorney was ineffective at trial by failing to fully investigate the factual circumstances surrounding the standing issue, and (2) that his attorney was ineffective at the appellate level by failing to vigorously raise issues regarding the application of *Minnesota v. Carter*, 525 U.S. 83 (1998). The magistrate judge concluded that the petitioner could not demonstrate that his attorney's performance was deficient because he could not show that Mr. O'Farrell's representation fell below an objective standard of reasonableness. Magistrate Judge Binder noted that Mr. O'Farrell "repeatedly raised issues of standing at every stage of the proceedings, including multiple motions for reopening or reconsideration" that led to four hearings before two judicial officers. R&R at 5. The magistrate judge stated that Mr. O'Farrell's decisions regarding arguments on appeal and the *Carter* case constitute "strategic choices" that are "virtually unchallengable" under *Strickland v. Washington*, 466 U.S. 668 (1984).

The petitioner objects to the magistrate judge's characterization of his arguments. The petitioner denies that his first argument is that his trial counsel was ineffective for failing to fully investigate the factual circumstances surrounding the standing issue. Instead, the petitioner argues

that his attorney's arguments on the standing issue were meritless and that his attorney failed to make an obvious and meritorious argument. The petitioner states his second argument is not that his attorney failed to vigorously raise issues regarding the application of *Minnesota v. Carter*, 525 U.S. 83 (1998), but rather that his attorney failed to present *any* argument on appeal regarding the application of *Carter*, which the petitioner believes would have been successful.

The petitioner next objects to the magistrate judge's statement that ineffective assistance of counsel claims are governed by *Strickland v. Washington*. He contends that many other decisions also address ineffective assistance, such as *Lockhart v. Fretwell*, 506 U.S. 364 (1993). The petitioner also objects to the magistrate judge's conclusion that his attorney's decision not to cite *Carter* in the court of appeals is a strategic decision not challengable in post-conviction proceedings. The petitioner states strategic decisions are challengable if based on inadequate investigation and unreasonable decisions, which he believes is the case here.

The petitioner also filed supplemental objections with leave of the Court. The supplemental objections state the respondent conceded that the petitioner was the occupant of the mobile home, which the petitioner believes gave him a property right sufficient to give him standing to challenge the search. The petitioner also claims that no finding was ever made that the lease between Hunt and Marcus Robinson was a sham. He says that nothing in the lease barred Hunt from legally allowing the petitioner to occupy the mobile home. The petitioner also denies that he has to prove he was lawfully on the property to have a legitimate expectation of privacy if by custom he was allowed to come onto the property whenever he chose to do so. The petitioner also argues that he has standing to challenge the search if, as the government claims, Marcus Robinson gave him permission to be on the farm to use the farm in furtherance of the conspiracy.

The petitioner's supplemental objections contain a number of objections to statements in the respondent's brief. For example, the respondent's brief asserts that the petitioner left behind his horses and a horse trailer but does not cite to the record. The respondent denies leaving these items behind. The petitioner objects to the entire description of the search in the respondent's brief as being a "sanitized version." The petitioner also objects to the respondent's implication that the petitioner was no longer residing in the mobile home in October 1996 and to the respondent's statement that John Hunt was a pseudonym used by various members of the conspiracy. The petitioner objects to the respondent's statement that he had never been legitimately on the property.

## II.

The Supreme Court has "emphasized that the Sixth Amendment right to counsel exists 'in order to protect the fundamental right to a fair trial.'" *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)). "In *Strickland*, [the Court] identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice." *Id.* at 368. *See also Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure

of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The petitioner is not entitled to relief on his ineffective assistance of counsel claim because he cannot demonstrate either deficient performance by Mr. O'Farrell or prejudice. The petitioner's belief that he can establish that he had a legitimate expectation of privacy in the trailer by showing that he could come and go at will from there is unfounded. It appears that the petitioner has seized upon something written by the magistrate judge in the August 18, 2000 R&R, quoted in a fotnote in the Sixth Circuit opinion. The magistrate judge wrote,

> The burden is on the defendant to establish that his presence was not wrongful, and this burden is not met by merely establishing that the premises are not occupied by anyone else or that the premises belong to a friend. Usually, what is required is a showing that a person authorized to do so gave permission for the defendant to be present on that particular occasion, *although such a particularized consent need not be shown if by custom the defendant was allowed to come on the premises whenever he chose to do so.* 5 Wayne R. LaFave, Search & Seizure § 11.3(b)(3d ed. 1996) (footnotes omitted).

*United States v. Robinson*, 116 Fed. App'x at 656 n.11 (emphasis added). The petitioner contends that because he "was allowed to come on the premises whenever he chose to do so," he had standing

to challenge the search. However, the quote the petitioner relies on stated only that a defendant need not show "particularized consent" if he can come and go as he wishes. He still must show consent to be on the property.

The defendant has the burden of demonstrating some interest in the property of another. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). That showing is essential to establishing a legitimate expectation of privacy, triggering Fourth Amendment protection. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). As suggested by the phrase "reasonable expectation," the defendant must both have a subjective expectation of privacy in the location, and his interest must be one that society recognizes as legitimate, either due to traditional concepts of property law "or to understandings that are recognized and permitted by society." *Smith*, 263 F.3d 571, 582 (quoting *Rakas*, 439 U.S. at 143 n.12). Such an interest will usually be found where the defendant and the owner or manager of the residence have a preexisting personal (as opposed to business) relationship and the defendant has a right of access to that residence. *See, e.g., Jones v. United States*, 362 U.S. 257, 259, 265 (1960) (finding standing to exist where the defendant was in the apartment with permission of the owner, slept there occasionally, possessed a key, and kept a change of clothes within), *overruled by United States v. Salvucci*, 448 U.S. 83 (1980) (overruling automatic standing doctrine); *United States v. Pollard*, 215 F.3d 643, 647-48 (6th Cir. 2000) (finding standing where the defendant had been friends with the lessee for seven years, spent the night occasionally, left clothes there, ate meals therein, and could stay there when the lessee was away); *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998) (finding no standing where the defendants were not overnight guests, and merely visited the premises to conduct illegal business). *See also United States v. Delgado*, 121 F. Supp. 2d 631, 639 (E.D. Mich. 2000).

Proof that the person challenging the search could come and go from the premises at will is not enough, however, without the additional proof of a preexisting relationship. For instance, in *United States v. McRae*, 156 F.3d 708 (6th Cir. 1998), the court of appeals found that a defendant "did not have a legitimate expectation of privacy by virtue of having stayed a week in the vacant premises that he did not own or rent." *Id.* at 711. *McRae* cited *United States v. Carr*, 939 F.2d 1442 (10th Cir. 1991), which held that a defendant's occupancy for three weeks of a hotel room that was not registered to him or to anyone he was sharing it with could not be the basis of a legitimate expectation of privacy because the defendant had no lawful possession or lawful control of the premises. *Id.* at 1446. *McRae* also cited *United States v. Gale*, 136 F.3d 192 (D.C. Cir. 1998), which held that a defendant who changed the locks on an apartment rented to someone else and used it for packaging drugs had no legitimate expectation of privacy in the apartment because he did not have legal authority to be there.

The precedents contradict Hayden's claim that the argument attorney O'Farrell did not make was obvious and meritorious. To the contrary, it was neither. "[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

For the same reason, Mr. O'Farrell cannot be faulted for his choices of appellate issues to pursue. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel need not raise every nonfrivolous argument on direct appeal, although he must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441, (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). O'Farrell vigorously prosecuted the

search issue on appeal; his decision not to attempt to distinguish *Minnesota v. Carter* was not an unreasonable choice.

But even if the Court were to find deficient performance, Hayden cannot demonstrate prejudice. Even if Hayden could show that he had a legitimate expectation of privacy in the trailer, he still would have to show that the search was unreasonable. He may have derived some hope that this Court would find it so, given the view expressed that no exigent circumstances existed to enter the vacant trailer where no one was in any apparent need of assistance. See Tr. of Hr'g on Mot. for Roconsideration, Oct. 11, 2000 (This Court stated: "In this case, the officer made the entry into the house trailer, the residence, if you will, did so without a warrant, without probable cause and as far as I could tell, without any exigent circumstances which would have excused obtaining a warrant."). The court of appeals, however, weighed in on the other side of the scale when it affirmed the conviction, stating:

> We pause to reflect on the nature of the warrantless search on October 31 because, in our view, the search was conducted under what we find to constitute exigent circumstances in the absence of a similar finding by the district court. "The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). . . . There is no evidence that the officers had any other reason or suspicion for investigating the farm than concern for the occupant's welfare. . . . Hayden's arguments fail to demonstrate lack of urgency. First, although the officers arrived two hours after the neighbor's call, Hayden did not provide any evidence as to when the officers in the field received the request to investigate or how long it took the officers to travel to the Argyle Road farm, nor any evidence regarding the level of emergency of the matter that the officers were attending to prior to investigating the Argyle Road farm. Second, the combination of the facts that the trailer was located on a farm where an occupant would be isolated, that animals on the farm had escaped and run free, that the neighbor had not seen Hayden for days and was concerned about his well-being, and that the door to the trailer was left unlocked but the heat was left on, was enough to give the officers a reasonable belief that Hayden, the occupant of the trailer, was in the trailer and in need of immediate aid.

*United States v. Robinson*, 116 Fed. Appx. at 655. Because it appears that Hayden's suppression motion was to meet an ill fate even if it could have run the standing gauntlet, this Court cannot find that prejudice would have flowed from any errant decision on the choice of standing arguments made by Mr. O'Farrell at trial or on appeal.

The petitioner is not entitled to relief on his Sixth Amendment claim.

III.

On February 5, 2007, the petitioner filed a motion to supplement his initial petition with additional claims of ineffective assistance. He first contends that his attorney was ineffective for failing to present authority for the exclusion of hearsay testimony by Austin Mattingly or, once that testimony was admitted, failing to request a cautionary instruction. The petitioner states Austin testified concerning a conversation Austin had with his brother, Curtis Mattingly, in which Curtis made comments about the petitioner. The petitioner also states Curtis Mattingly testified and denied making the statement to Austin.

The petitioner next argues that his attorney was ineffective for failing to move for a judgment of acquittal at the conclusion of the government's proofs. The petitioner contends that the government failed to prove his involvement in the conspiracy.

The petitioner's third new claim is that his attorney was ineffective for failing to challenge the legality of the search and seizure of a horse trailer located at the farm on Argyle Road. The petitioner contends that the police should have obtained a warrant prior to searching the trailer for its VIN number. The VIN number revealed that the petitioner owned the horse trailer, which led the government to investigate him. Had the officers not searched the trailer for the VIN, they never would have suspected his involvement in the crimes charged.

The petitioner's final new argument is that his attorney was ineffective for failing to challenge the sentence imposed. The petitioner states the government failed to give the notice required by 21 U.S.C. § 851 of sentence enhancement based on a prior drug-related offense. The petitioner alleges that his attorney failed to object to the enhancement. The docket reveals, however, that the government filed notices of sentencing enhancement on April 14, 1999 [dkt # 43], December 7, 1999 [dkt # 123], and August 18, 2000 [dkt # 202]. Moreover, the petitioner's attorney filed two motions challenging the enhancement, the first on August 18, 1999 [dkt # 60] and the second on August 20, 2001 [dkt # 313].

These new issues likely would fail on the merits. The Court does not reach that determination, however, because the request to supplement comes too late. Section 2255 provides a one-year statute of limitations, which is measured from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 para. 6. Because the petitioner has not alleged a governmental impediment to filing the claim he now seeks to assert, a claim newly recognized by the Supreme Court, or newly discovered facts, subparagraph 1 applies to his case.

A federal criminal judgment becomes final for the purpose of section 2255 at the conclusion of direct review. *United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002). "[F]or federal

criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532 (2003). The petitioner was sentenced and the judgment was entered on April 2, 2002. The petitioner appealed his conviction, and the Sixth Circuit affirmed the conviction on November 19, 2004. His conviction became final in this case ninety days later on February 17, 2005. *See Sanchez-Castellano*, 358 F.3d at 426. The limitations period, then, expired one year later, on February 17, 2006. Any new claims brought by the petitioner after that date will therefore be barred by the statute of limitations unless they relate back to the date of the original motion. The petitioner filed his motion seeking to add these new claims on December 11, 2006.

Ordinarily, amendments to pleadings relate back to the filing date of the original pleading when the new claim arises from the same transaction or occurrence as set forth in the original pleading. Fed. R. Civ. P. 15(a)(2). However, the Supreme Court has held that amendments asserting new claims based on different facts do not relate back to the original pleadings and therefore do not "escape the AEDPA's one-year time limit." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The petitioner's new claims do not arise from the same facts as either of the two claims he brought in his original motion because they do not depend "on the existence of a common core of operative facts." *Id*. at 659. Rather, these new claims are based on different facts than the previous claims and therefore do not relate back to the filing date of the original motion. The petitioner may not now amend his motion to vacate because the new claims are untimely.

Furthermore, the petitioner is not entitled to equitable tolling. A court must consider five factors in determining whether equitable tolling is appropriate in a habeas case:

(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). The petitioner has presented no evidence of a lack of constructive knowledge of the filing requirement and has not shown that he was reasonable in remaining ignorant of the legal requirement for filing his claim. The statute of limitations thus forecloses his new claims.

IV.

The Court finds that the petitioner's objections to Magistrate Judge Binder's report and recommendation lack merit. The proposed amendment to the petition comes too late and would be futile.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt ## 538, 551] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt # 536] is **ADOPTED**.

It is further **ORDERED** that the petitioner's motion to vacate his sentence [dkt # 514] is **DENIED**.

It is further **ORDERED** that the petitioner's motion for leave to amend or supplement his motion [dkt # 586] is **DENIED**.

It is further **ORDERED** that the government's motion to dismiss the supplemental petition [dkt # 588] is **GRANTED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: June 27, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 27, 2007.

                                        s/Felicia M. Moses
                                        FELICIA M. MOSES